UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APPLE INC.,<br><br>      Petitioner,<br><br>-against-<br><br>LMEG WIRELESS LLC dba LM WIRELESS,<br><br>      Respondent. | Civil Action No. __17-MISC-196__<br><br>**MEMORANDUM OF LAW IN SUPPORT OF AN EXPEDITED ORDER COMPELLING COMPLIANCE WITH APPLE INC.'S RULE 45 SUBPOENAS** |

Nicholas H. Lam
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
+1 212 506 5000
nlam@orrick.com

Thomas H. Zellerbach (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
+1 650 614 7400
+1 650 614 7401
tzellerbach@orrick.com

Nathan Shaffer (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
nshaffer@orrick.com

*Attorneys for Petitioner Apple Inc.*

## TABLE OF CONTENTS

Page

I. BACKGROUND ............................................................................................................. 1

    A. The Nature Of The Action Pending In The Northern District Of California ......... 1

    B. LM Wireless' Involvement With Counterfeit Apple Products .............................. 2

    C. Apple's Attempts To Obtain Discovery From LM Wireless. ................................ 2

    D. Apple's Efforts To Meet And Confer. .................................................................... 3

    E. Material Omitted From LM Wireless' Production. ............................................... 5

II. ARGUMENT .................................................................................................................. 6

    A. This Court Should Grant Apple's Motion To Compel. ......................................... 6

    B. The Information Requested In The Subpoena Is Relevant, Material, And Proportional To The Needs Of The Case. .............................................................. 6

    C. Any Objection To Apple's Subpoena Is Untimely And Should Be Deemed Waived. .................................................................................................................. 9

    D. Compliance With The Subpoena Is Neither Unduly Burdensome Nor Likely To Create Significant Expense. ................................................................. 9

    E. In The Alternative, Transfer To The Northern District Of California Is Warranted. ............................................................................................................ 10

III. CONCLUSION ............................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Jalayer v. Stigliano*,
  No. CV 10-2285 (LDH) (AKT), 2016 WL 5477600 (E.D.N.Y. Sept. 29, 2016) ...................... 6

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*,
  No. C 04-4146 MMC, 2007 WL 328696 (N.D. Cal. Feb. 2, 2007) .......................................... 4

*Microsoft Corp. v. Compusource Distributors, Inc.*,
  115 F.Supp.2d 800 (E.D.Mich.2000) ................................................................................... 4

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*,
  No. 07 Civ. 7983 (DAB)(HBP), 2016 WL 3042733 (S.D.N.Y. May 24, 2016) ...................... 9

**Statutes**

15 U.S.C. § 1114(1) ............................................................................................................... 1

15 U.S.C. § 1117(c)(2) ........................................................................................................... 8

17 U.S.C. § 501 ..................................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 45(d)(1) .......................................................................................................... 9

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................................. 1, 6, 9

Fed. R. Civ. P. 45(f) ....................................................................................................... 1, 10

Apple Inc. ("Apple") moves this Court for an Order compelling compliance with its duly issued and served document and deposition subpoenas to LM Wireless pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure.  The subpoenas seeks relevant information needed by Apple for an action pending in the issuing court, the Northern District of California.  In the alternative, Apple requests that this Court transfer this motion to the Northern District pursuant to Rule 45(f) of the Federal Rules of Civil Procedure.  In support thereof, Apple states as follows:

**I.     BACKGROUND**

**A.     The Nature Of The Action Pending In The Northern District Of California.**

In October of 2016, Apple filed suit in the Northern District of California against Mobile Star, LLC ("Mobile Star") and as-yet unnamed Doe Defendants who sell counterfeit Apple products.[1]  Shaffer Decl. ¶ 3.  Apple filed its suit after (i) both Amazon.com and Groupon identified Mobile Star as the supplier of counterfeit goods that Apple had bought from each online retailer, (ii) an Apple investigator made purchases of counterfeit Apple products directly from Mobile Star, and (iii) Mobile Star refused, among other things, to identify its sources of Apple-branded products.  Shaffer Decl. ¶ 4.  The counterfeit Apple products distributed by Mobile Star include, among other products, power adapters and Lightning® cables used to charge Apple's well-known consumer products.  Apple's tests showed that the counterfeit power adapters were so poorly designed and constructed that they pose serious safety risks, including the possibility of fire, electric shock, and even electrocution.  Shaffer Decl. ¶ 5, Ex. B (Pearson Decl.) ¶¶ 7, 9.

---

[1]   Apple's claims are for violations of the Lanham Act, 15 U.S.C. § 1114(1) (Trademark Counterfeiting and Infringement), 1125(a)(1)(A) (False Designation of Origin), the Copyright Act, 17 U.S.C. § 501 (Copyright Infringement), and California unfair competition laws.

Immediately upon filing suit, Apple sought and received leave to take expedited discovery from Mobile Star to learn who its upstream sources were for Apple-branded products. LM Wireless was one of the vendors Mobile Star identified as a supplier of the kind of Apple-branded products at issue in the litigation.

### B.  LM Wireless' Involvement With Counterfeit Apple Products

When Mobile Star identified LM Wireless as one of its vendors, Apple recognized the name as an entity which had been involved with counterfeit Apple products in the past.  The United States Customs and Border Patrol has notified Apple of nineteen seizures of counterfeit Apple products between September 4, 2014 and July 11, 2016 that LM Wireless was trying to import into the United States.  Shaffer Decl. Ex. C.  In addition, Groupon more recently identified LM Wireless as the source of counterfeit Apple products that Groupon distributed. Declaration of Joe Petersen ("Peterson Decl.") ¶ 4.

### C.  Apple's Attempts To Obtain Discovery From LM Wireless.

After the entry of a stipulated preliminary injunction against Mobile Star and the start of regular discovery, Apple served Rule 45 subpoenas on entities identified as Mobile Star's sources of Apple-branded products.  The requests for documents served on Respondent LM Wireless and others were narrow, seeking only documents in the four following categories:

1. Records, including invoices, of transactions through which LM Wireless acquired Apple-branded products between October 17, 2013, and October 17, 2016;

2. Communications during the same time period regarding the genuineness or origin of Apple-branded products;

3. Documents and communications exchanged with Mobile Star concerning Apple-branded products; and

4. Communications exchanged with Mobile Star that discuss the litigation between

Apple and Mobile Star.

Shaffer Decl. ¶¶ 9-10, Ex. D.

LM Wireless failed to timely respond or object to Apple's subpoena for documents. Apple served LM Wireless with the subpoena on February 22, 2017 at its workplace, and gave LM Wireless more than a full 30 days to produce documents. Shaffer Decl. ¶ 9, Exs. D, E. The objection deadline under Rule 45 and the production deadline set by the subpoena passed with no word from LM Wireless. Apple then served LM Wireless on April 25, 2017 with both a meet and confer letter demanding compliance with the subpoena and another copy of the subpoena. Shaffer Decl. ¶ 10, Exs. F, G. Two days later, counsel for LM Wireless contacted Apple's counsel to discuss the document subpoena and represented that the February 22, 2017, subpoena had not been served on anyone at LM Wireless. Apple believes that LM Wireless was properly served because the process server provided Apple with a notarized proof of service and photographic, time-stamped confirmation that she was at the proper location based on LM Wireless' given address. Shaffer Declaration ¶ 11, Ex. I. After serving belated objections seeking to limit the scope of the subpoena, LM Wireless has refused to produce most of the documents requested by the subpoena. As discussed below, LM Wireless continues to refuse to produce documents even after Apple offered to narrow the requests.

On May 4, 2017, Apple served LM Wireless with a deposition subpoena. LM Wireless timely submitted objections to the timing and proposed scope of the deposition. Shaffer Decl. ¶ 12, Ex. J. LM Wireless is refusing to produce a witness to testify on anything beyond the insufficient documents that LM Wireless has produced. Shaffer Declaration ¶ 14, Ex. L.

**D.** **<u>Apple's Efforts To Meet And Confer.</u>**

After LM Wireless received the deposition subpoena, it obtained new counsel who contacted Apple to confer regarding the outstanding document and deposition subpoenas. The

parties conferred on the scope of both subpoenas, and, while reaching agreement on a number of issues, are at impasse on the scope of two related document and deposition topics:

>   (i)     **Document Request No. 1**:  Invoices from sellers of Apple-branded products to LM Wireless from October 17, 2013, to October 17, 2016; and **Deposition Topic No. 2:** the identity of the Apple-branded products sold by LM Wireless during that time period, its sources for those products, and the amount of money LM Wireless paid for those products.[2]

>   (ii)    **Document Request No. 2 and Deposition Topic No. 3:** Communications between LM Wireless and any person concerning the genuineness or origin of the Apple-branded products it sold between October 17, 2013, and October 17, 2016.

With respect to Request No. 1/Topic No. 2, LM Wireless submits that it only must produce records relating to its sources for those specific items of Apple-branded goods it sold to Mobile Star and not records relating to its sources for all of its Apple-branded goods.  Shaffer Decl. ¶ 15, Ex. M.  As discussed below, Apple believes that LM Wireless cannot accurately track products from its vendors to its customers and has every an incentive to cherry pick the documents it produces to conceal known or likely sources of counterfeit products.  In an effort to avoid this motion, Apple agreed to narrow Document Request no. 1 and Deposition Topic No. 2 to cover only the kinds of Apple-branded products identified in Apple's Complaint:  Power adapters, Lightning® cables, and EarPods®.  Shaffer Decl. ¶ 13, Ex. K.  LM Wireless rebuffed Apple's compromise offer.

---

[2] Price is one indicia of a likely counterfeit.  *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*, No. C 04-4146 MMC, 2007 WL 328696, at *9 (N.D. Cal. Feb. 2, 2007) ("Where a defendant purchases branded goods for a price far below the market price for genuine branded goods, an inference is properly drawn that the defendant is, at a minimum, aware of a high risk the goods are not genuine branded goods.") (citing *Microsoft Corp. v. Compusource Distributors, Inc.,* 115 F.Supp.2d 800, 808 (E.D. Mich. 2000)) (finding defendant "appeared to turn a blind eye to clear indications" it purchased counterfeit Microsoft software, where, *inter alia,* defendant purchased "Microsoft" software for $50, although market price for genuine Microsoft software was $85 price).

As for the communications regarding the genuineness or origin of LM Wireless' Apple-branded goods, LM Wireless informed Apple that it would be willing to produce all such documents but that it does not have any and is unaware of any such communications. Shaffer Decl. ¶ 15, Ex. M ("LM Wireless is willing to produce documents and a witness on Request No. 2/Topic No. 3, as stated in Apple's May 9, 2017 letter. . . . However, LM Wireless does not have any documents responsive to this request, nor is it aware of any responsive non-written communications."). Apple has good reason to believe that LM Wireless' assertion is not true. Groupon has informed Apple that it directly communicated with LM Wireless about Apple's concerns about the counterfeit nature of the products for which Groupon has identified LM Wireless as the supplier. Petersen Decl. ¶ 4.

E. **Material Omitted From LM Wireless' Production.**

On May 18, 2017, almost two months after the original compliance deadline, LM Wireless produced a set of documents in response to Apple's request for production.

Records Related to Apple-branded Products. LM Wireless' production included only some of the documents called for by Apple's subpoena, and the production falls far short of either the full scope of Apple's request or the narrowed scope that Apple offered as a compromise. Moreover, LM Wireless' production does not even include any invoices from ▮▮▮▮▮ the supplier which LM Wireless indicates it obtained most of the Apple-branded products it sold to Mobile Star. Instead, LM Wireless produced only computer generated purchase orders that LM Wireless itself created. Shaffer Decl. ¶ 16, Ex. N. There is thus no evidence that LM Wireless even received Apple-branded products from ▮▮▮▮▮ Moreover, Apple knows that LM Wireless has not produced records of all of its purchases of the kinds of Apple-branded products at issue in the action with Mobile Star because, among other things, the documents produced do not include records of LM Wireless' purchases and shipments of

counterfeit Apple-branded products that were intercepted by U.S. Customs and Border Patrol when LM Wireless imported them to the United States. As there were over 25,000 units of counterfeit Apple products in those seizures, and the products in those seizures included two of the three kinds of Apple-branded product involved in the litigation – power adapters and EarPods cables – Apple has additional grounds to suspect that LM Wireless may have selectively chosen records that exclude the identity of some of the sources from which LM Wireless obtained product that it sold to Mobile Star. LM Wireless does not deny that it has failed to produce responsive documents that identify all of its vendors over the specified three-year period for the Apple-branded products at issue in the litigation.

Communications. LM Wireless has produced a very small set of communications, none of which concern the genuineness or origin of the Apple-branded products it acquired and sold.

## II.     ARGUMENT

### A.     This Court Should Grant Apple's Motion To Compel.

Federal Rule of Civil Procedure 45(d)(2)(B)(i) states that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Here, the Southern District of New York is the district "where compliance is required." *Id*; Shaffer Decl. Ex. D.

### B.     The Information Requested In The Subpoena Is Relevant, Material, And Proportional To The Needs Of The Case.

"[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Jalayer v. Stigliano*, No. CV 10-2285 (LDH) (AKT), 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (citation omitted). Rule 45 subpoenas are subject to Rule 26, which recognizes that "information is discoverable ... if it is relevant to any party's claim or defense and is proportional to the needs

of the case." *Id.* (quoting the Rule 26 Advisory Committee Notes to 2015 Amendments).

The information sought by Apple from LM Wireless is relevant both to Apple's claims against Mobile Star and to Mobile Star's defenses. Identifying the ultimate sources of LM Wireless' inventory for the kinds of products Mobile Star sold is central to the inquiry about the genuineness of the Apple-branded products sold by LM Wireless and, in turn, by Mobile Star which purchased Apple-branded products from LM Wireless. Though LM Wireless has argued that the sources for all of the kinds of Apple-branded products at issue in the litigation is overbroad, that argument is incorrect. When LM Wireless claimed it could track inventory from vendors to customers – an ability that apparently would be unique among vendors of LM Wireless' size – Apple challenged LM Wireless to show it had that capability. LM Wireless was not able to make such a showing, instead claiming it did not understand why it was important to show that the documents accurately reflected the actual goods sold to Mobile Star. Shaffer Decl. ¶ 14, Ex. L. Unless LM Wireless – which has a record of dealing with counterfeit Apple products – is compelled to provide invoices from all of its vendors for the types of product at issue in the litigation, it will be able cherry pick invoices from more reputable sources and conceal goods purchased from likely counterfeiters. Mobile Star would then be able to do the same in its litigation with Apple, relying on LM Wireless' cherry-picked documents.

Mobile Star, in an effort to rebut Apple's allegations that Mobile Star's distribution of counterfeits was willful or willfully blind, has claimed that it only buys from long-time, reputable suppliers that acquire excess and discontinued inventory from mobile phone carriers and phone warranty companies who obtain their products from authorized Apple dealers. Thus, information about all of LM Wireless' purchases of the products currently at issue in the

litigation is relevant to one of Mobile Star's defenses against willfulness.[3]

In addition, LM Wireless' communications with its any of its upstream vendors or downstream customers concerning the genuineness of the Apple-branded products it was distributing are relevant to the genuineness of the Apple-branded products that LM Wireless, and thus Mobile Star, were selling.  If a customer to whom LM Wireless sold the same kinds of products it sold to Mobile Star questioned the genuineness of those products, such a complaint is relevant to the nature of the goods sold by Mobile Star even if the questions or complaints did not come from Mobile Star.  Similarly, communications between LM Wireless and Mobile Star regarding the authenticity of Apple-branded products or Apple's lawsuit are missing from LM Wireless' production.  Such communications are relevant and material to showing the extent of Mobile Star's knowledge about the authenticity of any of the Apple-branded products.  For instance, communications from LM Wireless identifying the sources of its products, discussing the origin of the Apple-branded products at issue, or discussing the litigation between Mobile Star and Apple are all germane to establishing what Mobile Star knew and when.

Further, the Court should grant Apple's motion to compel because LM Wireless has demonstrated its willingness to withhold information.  LM Wireless' claims that it has no responsive communications relating to the genuineness of its Apple-branded goods is at odds with Groupon's representation that it had exactly that kind of communication with LM Wireless.

The sources of LM Wireless' Apple-branded products and whether LM Wireless has received complaints or inquiries about the origin or authenticity of Apple-branded products is highly relevant to establishing or disproving Mobile Star's "reputable suppliers" defense.  A supplier who purchases some products from an authorized source and some products of the same

---

[3] *See* 15 U.S.C. § 1117(c)(2) (authorizing enhanced statutory damages for willful counterfeiting).

kind from counterfeiters is not a reputable vendor.  For this reason also, LM Wireless should be compelled to provide documents pertaining to its purchases of all of the kinds of Apple-branded products at issue in Apple's litigation with Mobile Star for the three-year period specified in the subpoena.

### C. Any Objection To Apple's Subpoena Is Untimely And Should Be Deemed Waived.

If LM Wireless had valid objections to assert to the scope or subject of Apple's subpoena, such objections were due within 14 days of service, making the objections deadline March 8, 2017.  Fed. R. Civ. P. 45(d)(2)(B); *see, e.g.*, *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07 Civ. 7983 (DAB)(HBP), 2016 WL 3042733, at *4 (S.D.N.Y. May 24, 2016) (holding untimely objections to be waived under Rule 45 unless the objecting party shows good cause for the delay).  LM Wireless waited until April 27, 2017, well after the objection deadline had passed, to contact Apple.  Shaffer Decl. ¶ 11, Ex. H.  On this record, there is no good cause to excuse LM Wireless' failure to make timely objections, and the Court should hold any late-asserted objection to be waived.

### D. Compliance With The Subpoena Is Neither Unduly Burdensome Nor Likely To Create Significant Expense.

In any event, the burden of producing the requested materials on LM Wireless is small. *See* Fed. R. Civ. P. 45(d)(1) (a subpoena should "avoid imposing *undue* burden" (emphasis added)); 45(d)(2)(b)(ii) (a party should not incur "significant expense" complying with a subpoena).  Identifying its vendors and purchases over only a three-year period for only those kinds of Apple-branded products at issue in the litigation, namely power adapters, Lightning cables, and EarPods, is not unduly burdensome.

E. **In The Alternative, Transfer To The Northern District Of California Is Warranted.**

Federal Rule of Civil Procedure 45(f) authorizes this Court to transfer this Motion to "the issuing court" if "exceptional circumstances" exist. "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on these issues presented by the motion or the same issues are likely to arise in discovery in many districts." Advisory Committee Note to Rule 45(f), 2013 Amendment. "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Judge Orrick of the Northern District of California, the presiding judge in the action, is familiar with the claims in this litigation and the role Mobile Star's suppliers play with respect to Apple's claims and Mobile Star's defenses. At a Rule 16 Initial Case Management Conference held in February, Judge Orrick considered the need for Apple to take discovery of Mobile Star's suppliers and, over Mobile Star's request to stay third-party discovery, permitted Apple to proceed. Shaffer Decl. ¶ 17, Ex. O (2/21/17 Hr'g Tr. at 12:15-20). Given his grasp of the arguments and merits of the case thus far, Judge Orrick is well situated to weigh these considerations against the burdens of third party discovery. Indeed, in a motion to compel that Apple brought against another recalcitrant vendor, OEM World, Judge McMahon of this district quickly ordered OEM World to produce some documents and then transferred the case to Judge Orrick and directed Apple to seek any order compelling further production from Judge Orrick.[4]

---

[4] Judge McMahon's reluctance to order full compliance from OEM World at that time was based in significant part on OEM World being a "Mom and Pop" business operated solely by the owner and the burden full compliance could impose on such an operation. Shaffer Decl. ¶ 18, Ex. P (Hr'g Tr. at 21:15-22). LM Wireless is not such an operation. It has many employees and various business activities, including a direct-to-consumer business and a business-to-business wholesale operation. In addition, LM Wireless has been implicated for counterfeiting many times by U.S. Customs and Border Patrol, whereas no such history of OEM World's products being seized was presented to Judge McMahon.

## III. CONCLUSION

For the reasons stated above, Apple requests that the Court order LM Wireless to show cause why it should not complete its production of documents responsive to the four requests in Apple's subpoena by no later than June 8, 2017, or, in the alternative, transfer this action to the Northern District of California so that Judge Orrick can hear this motion.

Dated:    New York, New York

   June 8, 2017

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: _____
Nicholas H. Lam
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
+1 212 506 5000
nlam@orrick.com

Thomas H. Zellerbach (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
+1 650 614 7400
+1 650 614 7401
tzellerbach@orrick.com

Nathan Shaffer (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
nshaffer@orrick.com

*Attorneys for Petitioner Apple Inc.*